UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


KELLY JOSEPH RANDALL,

                Plaintiff,                Case No. 2:16-cv-207

v.                                     HON. PAUL L. MALONEY

A. WINNICKI, et al.,

                Defendants.
_____/

## **REPORT AND RECOMMENDATION**

This is a civil rights action brought by state prisoner Kelly Joseph Randall

pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants Winnicki, Soreano, and Henson

violated his right of access to the courts. Plaintiff alleges that his motion arguing that he received

an invalid sentence and for appointment of counsel was due in the 55th Circuit Court on September

17, 2014, but these motions were not delivered to Plaintiff until September 22, 2014, by the MDOC

prison legal writer program. The court summarized Plaintiff's claims as follows:

> In his complaint, Plaintiff alleges that on September 4, 2014, legal
> writer Jackson submitted Plaintiff's motion for correction of an
> invalid sentence and motion for appointment of counsel to the law
> library staff at the Chippewa Correctional Facility (URF). The
> motions were due in the 55th Circuit Court on September 17, 2014,
> but the motions were not returned to Plaintiff until September 22,
> 2014. The law library staff, which consisted of Winnicki, Soreano,
> and Henson, were supposed to have sent the filings to the law firm
> of Peterson and Palleta. On January 12, 2015, Plaintiff received an
> order from the 55th Circuit Court stating that his motions had been
> denied because they were untimely.
>
> In March of 2015, Plaintiff saw legal writer Rickman to prepare an
> appeal of the denial of Plaintiff's motion to correct sentence. When
> legal writer Rickman showed Plaintiff his legal intake record, it
> confirmed that legal writer Jackson had submitted the motions on
> September 4, 2014. On March 14, 2015, Plaintiff filed a grievance
> on Defendants Soreano, Henson, Winnicki, and the law firm of

Peterson and Palleta, asserting a denial of access to the courts. Plaintiff's grievance was denied on March 20, 2015. Plaintiff kited the law library seeking a copy of his legal intake record. On March 27, 2015, Plaintiff received a denial of his kite from Defendant Winnicki. On March 30, 2015, Plaintiff filed a grievance regarding the denial. On April 2, 2105, Plaintiff's grievance was rejected as being untimely. On April 13, 2015, Plaintiff filed a step II grievance on Defendant Woods, complaining about the denial of his step I grievance. Plaintiff's step I grievance was denied. Plaintiff filed a step III appeal which was denied on October 20, 2015. Plaintiff claims that Defendants violated his First Amendment right of access to the courts, as well as his Fourteenth Amendment right to due process.

(ECF No. 5, PageID.45-46). Defendants filed a motion for summary judgment (ECF No. 10) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed two response briefs (ECF Nos. 12 and 14).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief

he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741;

*Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643

(6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the

administrative review process in accordance with the deadlines and other applicable procedural

rules.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to

'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will

be considered unavailable where officers are unable or consistently unwilling to provide relief,

where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or

"where prison administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation."  *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860

(2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable

grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.

Inmates must first attempt to resolve a problem orally within two business days of becoming aware

of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If

oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and

submit a completed grievance form within five business days of the attempted oral resolution.  *Id.*

at ¶¶ P, V.  The inmate submits the grievance to a designated grievance coordinator, who assigns

it to a respondent.  *Id.* at ¶ V.   The Policy Directive also provides the following directions for

completing grievance forms: "The issues should be stated briefly but concisely.   Information

provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when,

where, why, how).  Dates, times, places and names of all those involved in the issue being grieved

are to be included."  *Id.* at ¶ R (emphasis in original). The Sixth Circuit has explained:

[A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

---

[1] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Plaintiff submitted a Step I grievance on March 19, 2015. (URF 15-03-0727-28i) (PageID.97). Plaintiff's grievance requested a memo from librarians Winnicki (Woniiki), Soreano, and Henson, as well as the law firm of Peterson and Palletta, indicating that they mishandled Plaintiff's motion, causing the denial of effective access to the courts. Plaintiff also requested emails concerning correspondence between the legal writer and the law firm of Peterson and Palletta. Plaintiff asserted in his grievance that the law firm held Plaintiff's motion too long after it was completed, causing the dismissal of the motion as untimely. The Step I grievance was rejected for violating PD 03.02.130, due to Plaintiff's failure to attempt to resolve the issue with the persons most directly involved prior to filing a grievance. (PageID.98). Plaintiff's grievance

was rejected at Step II because he had exceeded the time limits for filing a grievance on the issue asserted. (PageID.96). The Step II rejection was upheld at Step III. (PageID.94).

Plaintiff submitted a Step I grievance on March 30, 2015, asserting that Defendants Sorenson, Henson, and Winnicki, failed to provide him with a copy of the intake showing that his motions were prepared by the legal writers. Plaintiff requested in his grievance that the MDOC provide him with a copy of the intake that would show that his motion was prepared on September 4, 2014, but that he did not receive his motion until September 22, 2014. (URF 1504 0820 28E) (PageID.85). Plaintiff's grievance was rejected at Step I because it was untimely. (PageID.86). The Step I rejection of the grievance was upheld at Step II and Step III. (PageID82-84).

Plaintiff argues that his grievance should not have been rejected as untimely and alternatively argues that because he is asserting a violation of his right of access to the courts, he does not need to exhaust his MDOC grievance remedies prior to filing a federal lawsuit. Plaintiff contends that the denial of his access to the courts in September of 2014 was ongoing and, therefore, his grievance was timely. Plaintiff was aware that his motion was filed late when he received it in September of 2014. Plaintiff's grievance appears to have been properly rejected. Even if the court concluded that Plaintiff's grievance was not properly rejected, Plaintiff failed to exhaust the access to the court claims that he asserts in this case. Plaintiff's grievances essentially asserted a denial of emails, a request for an intake report, and a request that the Defendants provide him a memo that they mishandled his motion. Plaintiff's grievances sought discovery information and never asserted that the underlying conduct deprived him of his rights. In the opinion of the undersigned, Plaintiff failed to show that he properly exhausted his grievances under MDOC policy. Moreover, Plaintiff has failed to show that MDOC grievance policy does not apply to an allegation that he was denied access to the courts. Nor has Plaintiff cited any case law that could

support his argument that he was not required to exhaust his administrative grievance remedies prior to bringing an access to the courts claim in federal court.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (ECF No. 10) be granted.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

Dated:      May 8, 2017                                    /s/ Timothy P. Greeley
                                                      TIMOTHY P. GREELEY
                                                      UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).